Good morning. To please the court, I am Robert Keene, counsel for plaintiff and appellant Doug Yip. I'll be brief this morning. At the conclusion of the district court proceedings, Judge Klausner concluded that the facts and the result of the case strongly supported an award of attorney fees to Mr. Yip. Ultimately, however, Judge Klausner reduced the proposed lodestar amount by more than 60%. There was no objection. There was no objection from the other side. No hearing. There was no hearing. The reasons given by Judge Klausner were essentially limited to, number one, a review and analysis of the record, and number two, an evaluation of the evidence submitted by the plaintiff in support of the fee motion. Judge Klausner found no specific fault with any particular time entry. To be sure, he alluded to some of the factors that might justify a reduction in either the hourly rate or the claimed hours, but didn't specifically rely on any of those things. And even in this appeal, the other side, the opposing side, who didn't oppose the motion below, has not found fault with any particular time entry submitted by Mr. Yip in support of the fee motion. Well, can I ask this? Yes. As I understand it, there were kind of two different components of the litigation as it unfolded, and most of the hours, I don't know if it was maybe on the order of 60 hours or so, was focused on one component. That led to a remand? That's correct, Your Honor. The case started off as, admittedly, a very simple matter, an effort to compel the production of the documents that had been requested, and for a variety of reasons that aren't particularly important now, dragged on a bit. I think maybe 17 months passed and not much time went into the case, and then suddenly it blossomed into something a little more significant because this issue came up about, oh, well, yes, we did amend the plan to dramatically change the benefit calculation formula, so that opened up some additional issues. And then from that point forward, I think in the space of just a couple of months, we had some depositions, we had several rounds of trial briefing. Somewhere in there, the required, albeit unsuccessful, mediation took place. So, yes, things really did pick up speed towards the end, and most of the time was indeed devoted in the last two or three months of the case. So why are you entitled to fees now for that work? That's what I guess I just want to be clear on. Wouldn't an award of fees as to that 60-hour chunk of time be premature at this point, given that that just resulted in a remand? I don't think so, Your Honor. I think the rule has evolved or developed to the point where in ERISA cases, if you prevail on any significant issue achieved as a result of the filing of the lawsuit, you're entitled to fees. But in any event, that wasn't Judge Claster's reason. That's true, Your Honor. I mean, as I said earlier, he did find that an award of fees was strongly supported. So with question and objection, was the lawyer you whose fees got cut? Yes. Yeah, okay, that's what I thought. You filed your fee petition. You gave him the timesheets. You explained what you had done. You showed him the market rate for other lawyers doing the same kind of work, and then he came out with his decision, and that's what you've appealed. That's correct. So in what way, when should you have, quote, objected? Isn't this objection or not? Not his objection. The other side didn't object. Oh, didn't object. Okay, I understand. Right. There was no opposition to the fee motion at the district court level. Let me ask you this. How did you feel when you read that decision, except for being not just getting a haircut but getting scalped, okay? I was dumbfounded. No, I mean this seriously. I'm going to ask counsel. What did you tell your wife about what happened? I can't repeat to you what I told her, but I was dumbfounded. I find this, I'll be very candid with you, an absolutely insufficient statement of reasons. He cites a bunch of factors and says, I'm cutting at 60%. I'm reducing from 350 to 250, 275 on the hourly rate. When you were $100 or more, $150 or more, less than the comparables you pointed to going in. And then he cuts you from, what, 89-point-whatever-hours to 45 or something? Basically in half. In half. And where's the explanation? I think that's one of the main points of appeal. I don't think you received an explanation. I'll hear from opposing counsel, but I'm really kind of startled by that because I don't view that our need as district judges to explain ourselves just for the purposes of review, but for the litigants so they can understand, well, do I live with this or not? Is this something I can, in fact, appeal? Understood and agreed, Your Honor. And this may somewhat move my remaining comments. The only one of the Ninth Circuit cases I wanted to mention this morning is the relatively recent decision in the Moreno case, authored by Chief Judge Kaczynski. And as I read Moreno, the rule by and large in the Ninth Circuit, I think, is that the district court is supposed to defer to the winning lawyer's professional judgment regarding how much time is required in a particular case. Unless the other side is able to come up with specific persuasive reasons for reducing the proposed fee, then the district court generally should grant the award in full or with no more than the so-called haircut reduction, not exceeding 10%. The Moreno court did say that a somewhat cursory explanation may suffice where the disparity between the proposed lodestar amount and the awarded fee is relatively modest, but where the discrepancy is larger than a much more specific articulation is expected. And, of course, here we have a very significant disparity in excess of 60%. And it's true the district court undoubtedly has some discretion in this matter to begin with, but I think that the proper exercise of that discretion required a much more specific explanation than we were given. And with the panelists' questions, that's all I have for you. Okay. Thank you. Good morning, Your Honors. David Havock on behalf of defendant Appelli, retirement plan administrator. No. Not having objected, you don't have to defend this. Your Honors, for the record, my office was not involved in the underlying proceedings. We would have objected. We would have filed an opposition. And going over the record, I was surprised, indeed shocked, to see that there was no opposition filed to the motion. So with that said, and I've heard the comments, I feel like I'm operating from behind the eight ball here, but the Moreno case, I think, is instructive. There, the trial court's order justified a substantial reduction in hours based on the trial court's determination that the hours claimed were, quote, excessive. That was the reason I was given. Here, I think the trial court's order was substantially more detailed, gave more reasons, in particular, the non-complex nature of the case. I think that's what weighed on the trial court. But the problem was that the case may have begun non-complex, and it should have resolved itself quickly, but essentially because of the defendant's behavior, it didn't. I can't speak to the defendant's behavior. I think the ---- Behavior being months or a year and a half of saying there was nothing new and then suddenly coming up with something new. Letting the documents get out in bits and pieces. It's kind of startling, quite clearly, how long this all took, and the kind of random walk the defendant was taking through whatever it knew and whatever it had. I mean, put another way, it's a case that should never have had to be filed in the first place. That may be true, Your Honors. The document production of plan-related documents was tardy, should have been made much sooner. That was a fact determination made by the trial court. That's why penalties were awarded in favor of the plaintiff. All right, so litigating penalties takes time, and 80 hours is not a lot of attorney time. I understand. Over a two-year period. It may not be a lot of time, but really the only issue here was whether or not plan-related documents were given in accordance with ERISA, were given in a timely fashion. That was really the only issue at trial. And that issue, I feel, is a very simple, sanitized issue for the trial court to determine, which doesn't require a lot of attorney time. But not if people are lying. That's what was happening here. They were lying. They were saying that there was nothing, and then later on it turned out there was something. I don't know whether lying was taking place. It might have just been a lack of communication. Or inaccuracies. There were inaccuracies. It might have been some miscommunication, lack of communication between prior counsel and the clients. It might have just been. But from the plaintiff's point of view, he was asking for information, being told there wasn't any. That could have resolved the case, except that it turned out not to be true that there wasn't any. So if he had stopped then, he would have gotten an inaccurate result. If he had stopped at the simple stage, I mean, it was only persistence that got to the result that was the true result. And plaintiff's counsel should be commended on his persistence. Again, though, I think the issue really was at trial was whether planned documents were given in a timely fashion. That was it. Was there a trial? It was submitted on briefs. So there wasn't a trial. There wasn't a trial. No, it was a paper trial. A paper trial. So on that issue alone, it really was a simple trial that did not require much in terms of the way of briefing and the way of discovery and the way of any kind of trial preparation. It was a simple issue of whether documents were provided. It would help if you talked a little bit about the explanation question. I mean, even if you're all right, there's no explanation here. I mean, he said it was a simple case. It really wasn't such a simple case. As it turned out, it was theoretically a simple case, but it turned out not to be such a simple case. And beyond that, there's no explanation. Well, I beg to differ that there was no explanation. I respectfully understand the Court's position and questioning on that issue. The explanation really, the curve factors were discussed. They were mentioned, but they weren't related to the case. They were mentioned, and one factor in particular was discussed by the trial court, which was the non-complex, the uncomplicated nature of the case, which we've been discussing, which really was the issue of whether documents were given timely. But doesn't that require then the district court to explain why specific chunks of time that were spent were unnecessary? I didn't see any explanation to that extent. Your Honor, under the Moreno decision, which counsel discussed, the decision clearly states that hour-by-hour explanations are not required. Hour-by-hour, but just you spent, you know, 30 hours on preparing a brief that I find was totally unnecessary, given the simple nature of the case, something that relates the non-complex nature of the case to the amount of time that's being shaved off from what's being allowed. I think that's implicit in the court's order. I think when you compare this court's order to the orders that this court has deemed to be insufficient, lacking detail, that this court's order was much more detailed, provided a sufficient explanation. For instance, in Moreno, the adjective excessive was the basis for the court's reduction of suspicion. In this court's decision just this week in Padgett v. Leventhal, the trial court merely said that it had considered the curve factors and that the relevance of the determination of reasonableness of attorney's fees. And was there a reduction from the application in that case? Yes, there was a significant reduction. I believe in that case it was from $3.2 million in fees to $500,000 in fees. What kind of case was that? Pardon? I'm not familiar with the case. What kind of case? Padgett v. Leventhal. It was issued just this past Monday, 2013 Daily Journal, Daily Appellate Reports, 1933. But what kind of case was it? It was a First Amendment case. Okay, it wasn't an ERISA case. It wasn't an ERISA case, but the same type of analysis applied. And in that case the trial court merely said that it had considered these factors. Well, here the court did consider these factors, specifically the factor concerning the novelty and complexity of the issues involved. Was that a published decision? Yes, it was. Okay.  Not hours, hourly rate. Given the fact that an experienced attorney already had indicated his hourly rate in this case was less, it seems to me that the judge got them both coming and going. And if it's a simple and straightforward case, I can see how you reduce the hours. But on that basis alone, why do you reduce a lawyer's customary and ordinary rate, especially when he shows, compared to the marketplace, I'm charging two-thirds of what other lawyers doing this work have gotten. I think they have gotten, not just asked for, but gotten. Do you see my point? I see your point, Your Honor. Your Honor, I think the trial court is in the best position to determine the appropriateness, the reasonableness of the rate that's claimed and the rate that's then awarded, that's then applied. The cases clearly state within the circuit that the trial court is in the best position and knows the litigants and knows the litigation to determine what is appropriate in terms of the number of hours awarded and the reasonable hourly rate applied. But as to hourly fees, does the court not have to at least explain where he is getting the notion that you could have gotten somebody? I mean, it has to be implicit that there is somebody who does this work competently for $275 rather than $350. And he doesn't even have any indication of that. I don't think that's the function. It's a market rate, right? So there has to be somebody in the market who's doing this rate and one would assume competently for the rate that he's paying people, that he wants to pay him, $275. I think at that point the trial court would be engaging in speculation. That's right. It's engaging in speculation when he said it was $275. If he has no reference point, he doesn't give one to indicate that there is such a person. There are lawyers of competence in this area who do the work for $275, then he's not paying the market rate. Well, I think at that point the trial court would be introducing evidence and Well, then where did he get the $275 from? That's my point. He is introducing evidence. He must be making an assertion that there is a person, that the market rate for this work is $275, which has to mean that there is somebody who does that work for $275. There very well may be. There very well may not be, and he doesn't have any evidence that there is. It's exactly what you're saying. It's pure speculation. Well, I think, again, the trial court is in the best position to determine what the appropriate rate is. I think your point is, shouldn't we require and shouldn't the law require that in selecting that figure, the judge say, well, I've had other cases like this, and we all get them all the time, and I've had other fee applications and considerations, and in these kinds of cases of this sort, this is what I have routinely determined to be the market rate. And pointing at least, I think that's what the judge means by some kind of evidence, say, look, this is how I come to that figure because this is what I do in these cases of this sort, of this, in his view, simple and straightforward way and so forth. We have none of that. I think imposing that requirement would impose an undue burden on the trial court to then go and explain and cite to prior cases that the trial court had, refer to prior counsel's fee applications in prior cases. But it appears on the record that he has the determination that has to be made as to the fee, the rate is a determination of a market rate, right? Is that right? Is there any indication that he has made that determination, i.e., that there is a market for lawyers to do this work at that rate? At all, is there any indication that he's done that? I think the trial court here is guided by the factors that have been elaborated, incurred in subsequent cases, and those factors, to my knowledge, don't require the court to engage in a market rate analysis. The factors deal with the novelty. Suppose he had said $50 an hour. Well, then I think we probably wouldn't, I probably wouldn't be arguing so much before Your Honors. I think $275, it wasn't, counsel was claiming $350, court awarded $275. In my mind, that's not, it's a reduction. It might be a substantial reduction to counsel and his wife at home, but I don't think it's really, it's a type of reduction that would shock the conscience or make somebody think, wow, that was crazy. Okay, thank you very much for your time. Thank you. You may end. On the issue concerning the hourly rate, and if that's all that had happened here, we probably wouldn't be here today, but coupled with the 50% reduction in the time, the result was fairly drastic. But on the question of the hourly rate, I think maybe the best guidance is found in this Court's decision in the Welch v. MetLife case. And as I understand that case, a reduction in the proposed rate needs to be based either on a determination that counsel performed below the level of expertise that would have justified the rate or some other evidence that undermines the reasonableness of the requested rate. And we just don't have any of that here, not in opposition to the motion, of course, not in the other side's brief on this appeal, and certainly not in district court's decision explaining its fee award. Counsel also mentioned that the matter, or suggested the matter, was not particularly complex even by the time it reached trial. And with respect, I just don't think that's an accurate assessment of the case. The case started off as a relatively non-complex case, but certainly other issues had arisen, more complex issues had arisen. And I imagine you, it's been your experience, clients come to see you, you send those kinds of letters, you call a lawyer for their side, and a couple months, here come the documents. They're all done. It usually goes that way, Ron. What about his comments that there is case law that said that would find the explanation in this case adequate? I don't think any of the cases that I researched in the course of preparing this appeal and that I discussed in the briefs says that. I mean, you know, certainly as I mentioned earlier, a quote-unquote somewhat cursory explanation may suffice where the reduction of the proposed load star is fairly modest. Ten percent. Right, but where you get into the realm of 50 and 60 percent, what we're dealing with here, you need to know what the district court was thinking, and we don't know that. And that's my understanding, is that the greater the reduction, the greater the need for reasoned explanation for it. Understood. And a final comment is that, again, with regard to the supposed lack of complexity of the case, it may well be that that's something that might justify a reduction in the proposed hours, but I think the Ninth Circuit's decision in the Quesada case, which was mentioned in both parties' briefs, says essentially the complexity of the case is already reflected in the number of hours billed. Now, it may well be the district court has discretion to say, okay, in this case, you know, 89.8 hours, eh, really not required, probably could have been brought home to the barn for 60, but you have to say that, and no one did here. So unless there are further questions, that will complete my presentation. Thank you very much. Thank you. Thank you. Both counsel on Ip versus Little is submitted, and we will go on to Cox versus Powers. I'm sorry. May I ask one question? Sure. What remedy do you want? Simply reversal? I mean, I assume remand for recomputation of the hours. What is it? I apologize, judges. In a perfect world, I'd like you to grant the fee award, but I think you probably have to send it back to Judge Plowman. I apologize.
judges: Carr, Berzon, Watford